UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN RE:  THOMAS JOHN LANG

---

UTAH POWER SYSTEMS, LLC,
Creditor,

        Appellant,

v.                                    Case No:  2:21-cv-391-JES
                                      Case No:  2:20-bk-08895-FMD

THOMAS JOHN LANG, Debtor,
JONATHAN TOLENTINO, and
JONATHAN TOLENTINO, P.A.,

        Appellees.

---

## OPINION AND ORDER

This matter comes before the Court on an appeal from the Bankruptcy's Court's Order Denying Creditor, Utah Power System, LLC's Motion for Disgorgement (Doc. #2-2)[1] and the Order Denying Motion for the Imposition of Sanctions (Doc. #2-3).  Appellant filed an Initial Brief (Doc. #6), appellee filed an Answer Brief (Doc. #8), and appellant filed a Reply Brief (Doc. #9).  Appellant argues that the Bankruptcy Court erred when it denied disgorgement and sanctions because it applied incorrect legal standards and/or

---

[1] The Court will refer to the District Court docket as "Doc.", the Bankruptcy case docket as "Bankr. Doc.", and the Adversary Proceeding docket as "Adv. Doc."  Page numbers refer to the number generated by the court docketing in the upper right corner of the document.

improperly applied the facts and the law.  Finding no error, the
Court affirms.

I.

On October 19, 2018, attorney Jonathan Tolentino (Tolentino)
and his law firm filed a Voluntary Petition under Chapter 13 of
the Bankruptcy Code on behalf of Thomas John Lang (Lang or Debtor).
At the time the Voluntary Petition was filed, Sweeney and Connolly
Gulf Realty, L.C. (Sweeney & Connolly) had obtained a state court
judgment in 2014 against Lang and Marco Island Electronics, LLC
(MIE) in the amount of $629,381.38 for nonpayment of rent.  Lang
and MIE were also defendants in a civil suit pending in New York
(the New York Case).  Additionally, Lang and others were
defendants in a civil suit filed by Utah Power Systems, LLC (Utah
Power or appellant) in state court in Miami-Dade County, Florida
(the Miami Case).  Lang was also a defendant in a civil case in
Texas.  In his Chapter 13 schedule of creditors, Lang identified
Sweeney & Connolly as a creditor, stating that the amount of the
debt was unknown and was disputed, contingent and unliquidated.
The schedule did not refer to the existence of a state judgment.
Filing the Voluntary Petition triggered the automatic stay of
further proceedings in the other court cases.  See 11 U.S.C. §
362.

On January 11, 2019, Utah Power filed a motion for relief
from the automatic stay in connection with the Miami Case.  Lang

- 2 -

filed a response in opposition, but the Bankruptcy Court granted relief and allowed the Miami Case to proceed.  On June 21, 2019, the bankruptcy case was involuntarily dismissed because Lang failed to make two payments under his Chapter 13 Plan.  Tolentino and his law firm charged and received $4,100 for their services in the case.

Both the Miami Case and the New York Case continued after the dismissal of the bankruptcy case.  In the Miami Case, Utah Power filed a motion in October 2020 to amend its complaint, scheduling a hearing for December 7, 2020.  Plaintiff in the New York case had filed a motion for summary judgment in November 2020.

Instead of responding to either motion, on December 4, 2020, Lang filed another Chapter 13 Voluntary Petition, again represented by attorney Tolentino and his law firm. Once again, filing the Voluntary Petition resulted in an automatic stay of the other court proceedings.  In his Chapter 13 schedule of creditors, Lang again identified Sweeney & Connolly as a creditor, stating that the amount of the debt was unknown and was disputed, contingent and unliquidated.  No reference was made to the existence of the Judgment.

On December 29, 2020, Utah Power filed an Amended Motion for Relief From the Automatic Stay seeking to pursue the Miami Case and arguing that the second bankruptcy petition had been filed in bad faith.  Through counsel, Lang filed a response opposing relief

from the automatic stay.  On February 2, 2021, the Bankruptcy Court granted Utah Power's Amended Motion, allowing that state court litigation to proceed.

On February 18, 2021, Utah Power filed objections to the confirmation of Lang's Chapter 13 plan.  One of the objections asserted that Lang had "hidden" the 2014 Judgment in the Sweeney & Connolly case from the Bankruptcy Court and the creditors.

On February 19, 2021, Lang's counsel filed a motion to dismiss the second bankruptcy case because Lang "is unable and/or does not wish to proceed."  (Doc. #2-9, p. 3.)  On February 22, 2021, the Bankruptcy Court granted the motion, dismissed the bankruptcy case, and retained jurisdiction to examine the attorney fees paid. Tolentino and his law firm charged $4,500 for their services in the second bankruptcy case but had received only $2,500.

On March 8, 2021, Utah Power filed a Motion for Disgorgement seeking to have the Bankruptcy Court examine the fees paid to Lang's attorney and to disgorge any portion deemed excessive. Utah Power argued that the second bankruptcy case was a mere continuation of the first, and therefore counsel was not permitted any fees for the second case.  On the same date, Utah Power also filed a Motion for the Imposition of Sanctions requesting that the Bankruptcy Court find that both bankruptcy cases were filed in bad faith by Debtor and his counsel.  Utah Power argued that both bankruptcy petitions were filed to delay the state court cases and

- 4 -

with knowledge that Lang could never be a proper Chapter 13 debtor because the amount of the Judgment exceeded that allowed by 11 U.S.C. § 109(e).  Pursuant to 11 U.S.C. § 105(a) and Bankruptcy Rule 9011, Utah Power requested monetary fines and an injunction prohibiting Lang from filing in bankruptcy for two years.

At a hearing on April 27, 2021, the Bankruptcy Court rejected Lang's argument that it had no jurisdiction to consider the two motions after the voluntary dismissal of the bankruptcy case. "The Court first notes that despite the dismissal of Debtor's Chapter 13 case the Court has jurisdiction to consider the sanctions motion." (Doc. #4, p. 10, citing two Bankruptcy Court decisions.)  On the merits of the disgorgement issue, the Bankruptcy Court stated:

> I'm going to go ahead and deny the motion for disgorgement. The fees that Mr. Tolentino charged were allowed by this Court as reasonably -- presumptively reasonable fees. He's followed the schedule that this Court has approved for some time. He didn't receive the entire fee he worked in connection with this case and I don't see a basis for disgorgement; and even if there were a basis for disgorgement the fees would be disgorged to the Debtor, would not be available for creditors generally and particularly not to a judgment creditor who -- excuse me -- a creditor, an unsecured creditor who doesn't yet have a judgment.

(Doc. #2-26, pp. 21-22.)

At a hearing on May 13, 2021, the Bankruptcy Court summarized the competing positions concerning sanctions:

- 5 -

In its motion for sanctions Utah Power request an award of monetary sanctions against Debtor and Debtor's attorney based upon their bad faith in filing the first case and the second case and also request an order barring the Debtor from filing any further bankruptcy cases for two years.

The motion is filed under Federal Bankruptcy Rule of Procedure 9011 and 11 U.S.C. Section 105(a). Rule 9011(c) authorizes sanctions for filing papers that are frivolous, legally unreasonable, or without factual foundation or for filing papers in bad faith or for an improper purpose. That's In re: Mroz, M-R-O-Z, 65 F.3d 1567 at 1572 and an Eleventh Circuit case from 1995. Section 105(a) authorizes the court to enter any order that is necessary or appropriate to carry out the provisions of the bankruptcy code.

Generally, Utah Power asserts that the Debtor filed the bankruptcy cases solely to delay the state court lawsuits against him and that Debtor wrongfully opposed Utah Power's motion for relief from stay in the second case. That's Docket Number 46, Pages 14 to 15.

In response, Debtor contends that he has unsecured debts totaling about $99,000, he says excluding amounts asserted as unknown, and that the bankruptcy cases were filed for the proper purpose of reorganizing those debts. Debtor also contends that he properly opposed Utah Power's motion to lift the stay because this Court, the Bankruptcy Court is better equipped to administer the unliquidated claims. Debtor's response was Docket Number 50. That was at Pages 8 and 9.

In addition, Debtor contended that Utah Power failed to comply with the 'safe harbor' provisions of Rule 9011(c)(1)(A).

(Doc. #4, pp. 8-10.)  The Bankruptcy Court concluded:

In the Eleventh Circuit the analysis of
whether a bankruptcy case is filed in good
faith includes consideration of the facts and
circumstances of the specific case including
factors such as the debtor's motive in filing
the petition and whether the debtor
misrepresented facts in his bankruptcy papers.
That's my decision in In re: Howe, H-O-W-E,
2020 Westlaw 5745651. That decision was
January 21st, 2020.

Under this analysis, as the Court stated in
Howe, the basic inquiry is whether there has
been an abuse of the provisions, purpose, or
spirit of the bankruptcy code. On the merits
of the motion for sanctions the Court finds
that filing the bankruptcy petition to stay
litigation pending in another forum without
more is not sufficient to demonstrate bad
faith. On the contrary, a debtor's purpose to
stay nonbankruptcy litigation only
establishes bad faith if the debtor cannot
demonstrate that he also has an intent and
ability to reorganize his financial affairs.
That's In re: Zaber, Z-A-B-E-R, 520 B.R. 159
at 166, decision from the Bankruptcy Court for
the Middle District of Pennsylvania in 2014.

As this Court held in Howe, dismissal of a
case for bad faith should be reserved for
egregious situations such as those involving
the concealment or misrepresentation of assets
or conduct amounting to fraud or gross
negligence. The Zaber case at 520 B.R. at 165
also held that.

The Court understands that from Utah Power's
as well as this Court's perspective Debtor's
opposition to Utah Power's motion for relief
from stay in the second case appear to be
unfounded in light of the Court's ruling
lifting the automatic stay in the first case,
but the record in its entirety does not
establish that Debtor's two bankruptcy cases
constitute an abuse of the bankruptcy process.

Further, it is generally accepted that the
bankruptcy court is an efficient forum in

which to resolve litigation including the
allowance of claims and the dischargeability
of debts which are core proceedings under 28
U.S.C. Section 157(b)(2)(B) and (b)(2)(B) --
no, (b)(2)(I) -- I'm sorry -- (b)(2)(B) and
(b)(2)(I). Debtor and Debtor's counsel could
make a good faith argument that 22 months
after Debtor filed the first case the dispute
with Utah Power remained unresolved and the
bankruptcy court would be an efficient forum
to resolve that dispute.

The Court recalls that one of the factors it
considered in granting Utah Power's motions
for relief from stay in both cases was the
fact that there were other defendants in the
litigation and that it would be inequitable to
require Utah Power to litigate the same issues
in different forums. If this had not been the
case, the Court might have agreed with the
Debtor.

Here, the totality of the circumstances do not
support a finding of bad faith or justify the
imposition of sanctions. The totality of the
circumstances include: first, Debtor owes
significant debts to a number of creditors and
he was being sued in multiple venues including
Florida, New York and Texas -- in other words,
he had pressing financial needs to address
separate and apart from the litigation with
Utah Power; Second, Debtor stated in his
schedules that he is employed and that he has
monthly net income with which to fund a plan;
third, Debtor substantially complied with the
requirements of Chapter 13 in the first case
by filing a schedule of his assets and
liabilities and a meaningful plan, attending
his creditor's meeting and making plan
payments for five months; fourth, Debtor filed
his second Chapter 18 – his second Chapter 13
case 18 months after his first case was
dismissed and after the state court plaintiffs
had resumed the prosecution of their lawsuits;
fifth, Debtor substantially complied with the
requirements of Chapter 13 in the second case
by filing the required information, by filing

> a plan providing for increased payments over
> 60 months and by attending his creditor's
> meeting, and the Court finds the Debtor
> satisfactorily addressed Utah Power's
> allegations regarding alleged inaccuracies in
> his bankruptcy schedules, and that was at the
> Debtor's response in Docket Number 50 at Pages
> 7 and 8; and six and finally, Utah Power has
> not shown that the Debtor concealed any assets
> or transfers in the bankruptcy cases.
>
> So for all those reasons the Court will deny
> the motion for sanctions. Mr. Saval, I want to
> thank you for your briefing and your excellent
> article – excellent arguments in this matter
> but this is just not a case that rises to the
> level of sanctionable conduct in my opinion.

(<u>Id.</u>, pp. 8-14.)

## II.

A district court has jurisdiction to hear appeals "from final judgments, orders, and decrees" of the Bankruptcy Court. 28 U.S.C. § 158(a). "An appellate federal court must satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a cause under review." <u>Absolute Activist Value Master Fund Ltd. v. Devine</u>, 998 F.3d 1258, 1264 (11th Cir. 2021) (quoting <u>Mitchell v. Maurer</u>, 293 U.S. 237, 244 (1934)). The Court is satisfied that both courts have jurisdiction. A Bankruptcy Court retains jurisdiction to consider the disgorgement of attorney fees and the imposition of sanctions after the voluntary dismissal of the bankruptcy case. <u>See</u> <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384, 395-96 (1990); <u>Absolute</u>, 998 F.3d at 1265; <u>Law Sols. of Chicago LLC v. Corbett</u>, 971 F.3d 1299, 1316-17 (11th Cir. 2020).

Additionally, the district court has jurisdiction because the orders denying disgorgement of attorney fees and denying sanctions are "final orders."  A final order is "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." In re Porto, 645 F.3d 1294, 1298–99 (11th Cir. 2011) (citations omitted).  Here, the Chapter 13 case had been dismissed, the orders resolved separate and discrete issues, and nothing remained to be done on the issues after entry of the orders.

### III.

The legal conclusions of the bankruptcy court are reviewed *de novo*, while findings of fact are reviewed for clear error.  In re Globe Mfg. Corp., 567 F.3d 1291, 1296 (11th Cir. 2009).  "A factual finding is clearly erroneous if the reviewing court examines the evidence and is 'left with the definite and firm conviction that a mistake has been made.'"  In re Stanford, 17 F.4th 116, 121 (11th Cir. 2021) (quoting In re Feshbach, 974 F.3d 1320, 1328 (11th Cir. 2020)).

A determination concerning the imposition of sanctions under Fed. R. Civ. P. Rule 11 or Bankruptcy Rule 9011 is reviewed for abuse of discretion.  Gulisano v. Burlington, Inc., 34 F.4th 935, 941 (11th Cir. 2022); Corbett, 971 F.3d at 1304; In re Mroz, 65 F.3d 1567, 1571 (11th Cir. 1995).  The exercise of a bankruptcy court's inherent authority to impose sanctions is reviewed for

abuse of discretion. In re Evergreen Sec., Ltd., 570 F.3d 1257, 1263 (11th Cir. 2009). Similarly, a decision on whether to disgorge attorney fees in a bankruptcy proceeding is reviewed for abuse of discretion. Corbett, 971 F.3d at 1305; In re Porto, 645 F.3d at 1303. Finally, whether to impose a filing injunction is reviewed for abuse of discretion. Miller v. Donald, 541 F.3d 1091, 1096 (11th Cir. 2008).

The abuse of discretion standard of review is "extremely limited and highly deferential." Corbett, 971 F.3d at 1304 (citation omitted). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or bases the decision upon findings of fact that are clearly erroneous." Johnson v. 27th Ave. Caraf, Inc., 9 F.4th 1300, 1310 (11th Cir. 2021) (citation and quotation marks omitted). "The abuse of discretion standard allows a range of choices for the [bankruptcy] court, so long as any choice made by the court does not constitute a clear error of judgment." Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa., 713 F.3d 71, 77 (11th Cir. 2013) (citation omitted).

## IV.

Utah Power argues that the Bankruptcy Court erred in failing to disgorge attorney fees because it failed to make any determination of whether the second Voluntary Petition was a mere continuation of the first, "which is the proper standard for

determining disgorgement of fees for serial filers." (Doc. #6, p. 19.) Instead of determining the mere continuation issue, Utah Power argues that the Bankruptcy Court erroneously looked to whether the amount of the attorney fees was reasonable. (Id. at 22, 43-44.) This was error, Utah Power asserts, because reasonableness is not the standard for serial Chapter 13 filers. (Id. at 44.) Since the second petition was a mere continuation of the first, Utah Power asserts that "the Bankruptcy Court was required to determine an amount of Tolentino's fees that were excessive." (Id.) Utah Power asserts that the entire $2,500 paid as the second fee was excessive and must be disgorged. (Id. at 44.)

The Bankruptcy Court's ability to disgorge attorney fees is founded on 11 U.S.C. § 329(b), which provides:

> **(b)** If such [attorney] compensation [for services rendered or to be rendered] exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to--
>
> **(1)** the estate, if the property transferred--
>
> **(A)** would have been property of the estate; or
>
> **(B)** was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
>
> **(2)** the entity that made such payment.

11 U.S.C.A. § 329(b). Thus, the only statutory predicate for disgorgement of fees is that attorney compensation "exceeds the

reasonable value of any such services." Id.  Thus, reasonableness
is the standard, and Utah Power's argument to the contrary is
without merit.

Utah Power's reliance on In re Mellard, 117 B.R. 716, 717
(Bankr. M.D. Fla. 1990) as binding authority is misplaced.
Bankruptcy courts in the Middle District of Florida have identified
a problematic fact pattern involving repeat Chapter 13 filings by
the same debtor.

> Under this all too common pattern, a debtor
> urges confirmation of a plan when the facts
> unfortunately reveal that the debtor has no
> realistic prospect of successfully completing
> the payments under the plan. Either before or
> after confirmation, the debtor fails to make
> the required plan payments, the case is
> dismissed, and the debtor then refiles one or
> more additional times before the debtor
> finally accepts reality and abandons the
> effort.

Mellard, 117 B.R. at 717.  This problem is "further complicated
by the manner in which attorneys charge fees. It is the practice
of the bar to charge a flat fee for representing a debtor in a
Chapter 13 case."  Id. at 718. As a result of this practice,

> [i]n those cases where intervening events make
> the factual situation different in the second
> case from that existing in the first case, it
> may be entirely appropriate for the attorney
> to treat the second case as a "new" case and
> to charge a full, second fee. In those cases
> in which there is nothing or little different
> in the second case from that existing in the
> first case, however, the "case" is the same,
> and the dismissal and refiling represent

nothing but an opportunity for the lawyer to charge twice.

Id.   One bankruptcy judge summarized his effort to curtail excessive attorney fees in such situations:

> To control—if not remedy—the additional dimension of abuse that results from the excessive attorneys fee payment, the court has established a practice of carefully scrutinizing the attorneys fee paid by the debtor in repeat filing situations. When the court finds the factual circumstances present in the second case to be different from those present in the first, the court has no difficulty in permitting the payment of a second, full fee. In those circumstances in which the second filing is a mere continuation of the identical case initially filed with the first petition, however, the court has determined the excessive amount paid and ordered a disgorgement of that excessive amount. This practice is well known to the Chapter 13 bar in this division.

Id.

Nothing in Mellard is binding on other bankruptcy court judges.  "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." Camreta v. Greene, 563 U.S. 692, 709 (2011) (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1][d], p. 134-26 (3d ed. 2011)).  Additionally, nothing in Mellard purports to modify § 392(b).  The crux of the Bankruptcy Court's inquiry remains as the statute mandates: Does the attorney compensation exceed the reasonable value of the services.  Mellard's approach

may be useful in some cases but does not mandate a certain process be followed when a bankruptcy court determines the reasonableness of the attorney fees.

Here, the bankruptcy judge was obviously familiar with the facts of both Chapter 13 petitions, having presided over both cases.  The bankruptcy judge noted that the charged fees were within the Bankruptcy Court's schedule of presumptively reasonable attorney fees, and therefore were presumptively reasonable.  The bankruptcy judge found that counsel did not receive the entirety of the second fee, and that there was no basis for disgorgement of the fees he received.  (Doc. #2-26, pp. 21-22.)  The bankruptcy judge did not apply an incorrect legal standard and her factual determinations were not clearly erroneous.  Finding no abuse of discretion, the decision not to disgorge attorney fees is affirmed.

**V.**

Utah Power sought sanctions under Bankruptcy Rule 9011, the inherent power of the bankruptcy court, and 11 U.S.C. § 105(a). The motion for sanctions was denied by the Bankruptcy Court, which Utah Power asserts was error.

Bankruptcy Rule 9011 is substantially identical to Federal Rule of Civil Procedure 11.  In re Mroz, 65 F.3d at 1572. Sanctions under both Rule 11 and Bankruptcy Rule 9011 are warranted when a party files a pleading or motion that "(1) has no reasonable factual basis; (2) is based on a legal theory that has no

reasonable chance of success and that cannot be advanced as a
reasonable argument to change existing law; and (3) is filed in
bad faith for an improper purpose." <u>Johnson v. 27th Ave. Caraf,
Inc.</u>, 9 F.4th 1300, 1314 (11th Cir. 2021) (internal quotation marks
omitted).  <u>See</u> <u>also</u> <u>Gulisano v. Burlington, Inc.</u>, 34 F.4th at 941-
42.  As <u>Gulisano</u> recently stated:

> When deciding whether to impose sanctions
> under Rule 11, a district court must conduct
> a two-step inquiry, determining "(1) whether
> the party's claims are objectively frivolous;
> and (2) whether the person who signed the
> pleadings should have been aware that they
> were frivolous." <u>Baker v. Alderman</u>, 158 F.3d
> 516, 524 (11th Cir. 1998). A factual claim is
> frivolous when it has no reasonable factual
> basis. <u>See id.</u> A legal claim is frivolous when
> it has no reasonable chance of succeeding. <u>See
> id.</u> When the attorney's evidence is "merely
> weak," but supports a claim under existing law
> after a reasonable inquiry, sanctions are
> unwarranted. <u>Id.</u> Sanctions are warranted,
> however, when the attorney exhibits "a
> deliberate indifference to obvious facts." <u>Id.</u>
> (internal quotation marks omitted).
>
> If the attorney failed to make a reasonable
> inquiry, then "the court must impose sanctions
> despite the attorney's good faith belief that
> the claims were sound." <u>Worldwide Primates,
> Inc. v. McGreal</u>, 87 F.3d 1252, 1254 (11th Cir.
> 1996). The reasonableness of the inquiry
> depends on the circumstances of the case. <u>See
> id.</u>
>
> In addition, an attorney's obligations with
> respect to the contents of pleadings or
> motions are not measured solely as of the time
> when the pleading or motion is initially filed
> with the court, but also at the time when the
> attorney, having learned the claims lack
> merit, reaffirms them to the court. <u>Turner v.</u>

> *Sungard Bus. Sys., Inc.*, 91 F.3d 1418, 1422
> (11th Cir. 1996) (citing Fed. R. Civ. P. 11(b)
> advisory committee's note to 1993 amendment).
> "That the contentions contained in the
> complaint were not frivolous at the time it
> was filed does not prevent the district court
> from sanctioning [the attorney] for his
> continued advocacy of them after it should
> have been clear that those contentions were no
> longer tenable." *Id.*

*Gulisano*, at 942-943.  *See also* *In re Mroz*, 65 F.3d at 1572-73.

Additionally, federal courts, including bankruptcy courts, possess inherent authority to impose sanctions against attorneys and their clients. *In re Walker,* 532 F.3d 1304, 1309 (11th Cir. 2008).  Title 11 U.S.C. § 105(a) also gives the bankruptcy court the authority to "*sua sponte,* tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a).

Utah Power argues that Lang and his counsel should have been sanctioned for filing the second bankruptcy case in bad faith solely to delay separate legal proceedings and for mischaracterizing the Sweeney & Connolly debt in the Chapter 13 schedules.  More specifically, Utah Power argues that the Bankruptcy Court erred by: (1) Failing to consider whether Lang and his attorney knew Lang was ineligible for Chapter 13 because Lang's debt exceeded the amount set forth in 11 U.S.C. § 109(e); (2) Failing to consider whether Lang's and counsel's nondisclosure

of the 2014 Judgment was bad faith conduct; (3) Accepting Lang's assertion that the amount of the Judgment was subject to a setoff, which was incorrect because (a) Lang had not sought timely relief in state court; (b) whether Lang was entitled to reduce the amount of the Judgment did not permit Lang or his attorney to omit the Judgment from the bankruptcy schedules; and (c) the omission of the Judgment affected Utah Power because it delayed the Miami Case and caused significant fees in the bankruptcy cases. (Doc. #6, pp. 21-22.)  The Court finds no abuse of discretion.

Utah Power argues that Lang and his attorney inaccurately stated that the amount of the Sweeny & Connolly debt was "unknown, contingent, and unliquidated" when in fact there was a 2014 Judgment in the amount of $629,381.38 which "became fixed as a matter of law via final judgment on August 18, 2014. . . ." and therefore was noncontingent and liquidated. (Doc. #6, pp. 25-26, 28.)  In Utah Power's view this mischaracterization alone constitutes the required bad faith for sanctions. (Id. at 26-28.) The motivation for the concealment of the Judgment, Utah Power further argues, was to hide that fact that Lang was not eligible for Chapter 13 because his unsecured debt exceeded the eligibility limits of 11 U.S.C. § 109(e) of less than $419,275. (Id. at 28.) Utah Power concludes that Lang and his counsel filed both Chapter 13 petitions knowing Lang was ineligible for Chapter 13. (Id. at 28.)  Utah Power contends that the Bankruptcy Court erred when it

failed to determine that the Judgment rendered Lang ineligible to be a Chapter 13 debtor.

The Bankruptcy Court stated:

> Creditor complains that Debtor's Schedules are misleading by listing creditor, Sweeny and Connolly Gulf Realty, LC as contingent, unliquidated and with unknown amount. (Doc. No. 46 pg 14). Sweeney and Connolly Gulf Realty, LC obtained a judgment in the amount of $629,381.38 entered on 8/1/2014 (Doc. No. 46-2). This amount was derived from accelerated rent due from 2014 through 2020 under a commercial lease agreement (Doc. No. 46-2 pg 2). The judgment also issued a Writ of Possession in favor of Sweeney and Connolly Gulf Realty, LC. (Doc. No. 42-2 pg 3). The law in Florida is clear that a lessor is prohibited from retaining accelerated rent and proceeds from reletting. <u>Bre Mariner Marco Town Ctr., LLC v. Zoom Tan, Inc.</u>, 2016 U.S. Dist. Lexis 56665 (M.D. Fla 2016) citing <u>Jimmy Hall's Morningside, Inc. v. Blackburn & Peck Enters., Inc.</u>, 235 So. 2d 344 (Fla 2d. DCA 1970). Here the Debtor surrendered the property to Creditor, Sweeney and Connolly Gulf Realty, LC, and listed the amount as contingent, unliquidated, unknown and subject to setoff as they would be entitled to an offset relating to proceeds obtained from reletting the leased premises during the remainder of the lease term.

(<u>Id.</u>, pp. 7-8.)

It is certainly true that a debtor whose noncontingent, liquidated, unsecured debts exceed the statutory limitations is ineligible for Chapter 13 proceedings. <u>United States v. Verdunn</u>, 89 F.3d 799, 801 (11th Cir. 1996). It is also true that the debt will be included in the § 109(e) calculation even if it is

disputed.   Verdunn, 89 F.3d at 801.   But the debt must also be "liquidated:"

> *Black's Law Dictionary* defines a liquidated debt as one where it is certain what is due and how much is due. *Black's Law Dictionary* 930 (6th ed. 1990). A liquidated debt is that which has been made certain as to amount due by agreement of the parties or by operation of law. *Id*. Therefore, the concept of a liquidated debt relates to the amount of liability, not the existence of liability. *See* In re McGovern, 122 B.R. 712, 715 (Bankr. N.D. Ind. 1989); see also *C. McCormick, Handbook on the Law of Damages,* § 54 at 213 (1935). If the amount of the debt is dependent, however, upon a future exercise of discretion, not restricted by specific criteria, the claim is unliquidated.

Verdunn, 89 F.3d at 802 (footnotes omitted).   In this case, the Sweeney & Connolly Judgment did not liquidate the debt.

Sweeney and Connolly had entered into a Lease (Doc. #2-10, pp. 29-40) with Marco Island Electronics LLC as the tenant for a 7-year term ending on February 28, 2020.  Lang signed a Guarantee (Id., p. 41).  The Final Judgment (Doc. #2-10, p. 49-52) was entered after a default, and provided the amount due was for monthly rent from 2014 through February 28, 2020 (the end of the lease) in the amount of $629,381.38, plus costs, attorney fees, and interest.  A Writ of Possession was also granted to Sweeney and Connolly, and the trial court retained jurisdiction to enter further orders to compel completion of Florida Rule of Civil Procedure Form 1.977, including all attachments, and to serve it

on the judgment creditor's attorney.   Sweeney & Connolly did not

file a proof of claim in the bankruptcy case, and the premises

were relet and proceeds retained by Sweeney & Connolly.   (Doc. #8,

p. 26 n.5.)

Florida law is clear that Sweeney & Connolly cannot keep both

the Judgment amount and any reletting proceeds.

> While City Center validly exercised its option
> to seek accelerated rent from Horizon, it
> cannot collect accelerated rent from Horizon,
> relet the premises to a third party during the
> remainder of the lease term, and retain those
> rental proceeds as well. See Blimpie Capital
> Venture, Inc. v. Palms Plaza Partners, Ltd.,
> 636 So. 2d 838, 840-41 (Fla. 2d DCA 1994);
> Jimmy Hall's Morningside, Inc. v. Blackburn &
> Peck Enters., Inc., 235 So. 2d 344, 346 (Fla.
> 2d DCA 1970); Quintero-Chadid Corp. v.
> Gersten, 582 So. 2d 685, 688-89 (Fla. 3d DCA
> 1991). Any rental proceeds received by City
> Center from reletting the premises during the
> remainder of the lease term must be applied
> against the accelerated rent due from Horizon.
> See Jimmy Hall's, 235 So. 2d at 346.

Horizon Med. Group, P.A. v. City Ctr. of Charlotte Cnty., Ltd.,

779 So. 2d 545, 546 (Fla. 2d DCA 2001).   "[W]hile the appellee was

entitled to accelerate the rent payments, i[t] cannot collect the

full amount due and then relet the premises to a third party and

retain those proceeds also. The latter proceeds must be applied

against the amount due from the original lessee to mitigate its

liability for damages."   Jimmy Hall's Morningside, Inc. v.

Blackburn & Peck Enters., Inc., 235 So. 2d 344, 346 (Fla. 2d DCA

1970).   Since the amount of the debt represented by the Judgment

is not known, it is not a liquidated debt.  Neither Lang nor his counsel took a frivolous position by asserting that the debt to Sweeney & Connolly was not liquidated.

But Utah Power argues that Lang waived his dispute with the Judgment amount by not filing a timely appeal or Rule 1.540 motion to correct the failure of the Judgment to provide for an accounting for reletting the premises.  Utah Power predicts that the state courts would find any such motion untimely.  (Doc. #6, p. 31.) But it is not a frivolous position to assert that the debt was not "liquidated" under the circumstances of this case, even if that position turns out to be incorrect or waived.  Regardless of the failure of the Judgment to retain jurisdiction for an accounting, Sweeney & Connolly will not be allowed to collect twice.

A "Rule 11 sanction is not a judgment on the merits of an action" but rather "it requires the determination of a collateral issue: whether the attorney has abused the judicial process." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396 (1990). Utah Power may not litigate the merits of the Judgment through a Rule 11 motion.  Am. Marine Tech, Inc. v. World Group Yachting, Inc., 21-11336, 2021 WL 4785888, at *4 (11th Cir. Oct. 14, 2021).

Utah Power also asserts that the Bankruptcy Court erred in finding that the omission of the Judgment from the schedules, even if omitted in bad faith, did not affect Utah Power.  Utah Power asserts that the omission of a reference to the Judgment in the

schedules was intended to, and did, delay the Miami Case by the improper filing of a Chapter 13 petition and caused Utah Power to incur fees in connection with the bankruptcy proceedings. (Doc. #6, pp. 34-36.) The Bankruptcy Court did not err. Utah Power knew of the Judgment, and as discussed above, the Judgment did not prevent the arguably proper filing of the Chapter 13 petition and Utah Power's incurring fees.

Utah Power also argues that Lang and his counsel wrongfully disputed Utah Power's right to relief from the automatic stay after the Bankruptcy Court had granted relief in the first Chapter 13 proceeding, which is evidence of bad faith. (Doc. #6, pp. 37-38.) But a party is allowed to present a legal position which has been rejected by a court in order to convince the court to change its mind or to preserve an issue for appeal. The Court finds that the Bankruptcy Court did not err in failing to find that this was evidence of bad faith.

After a *de* novo review of the record, the Court finds no legal errors by the Bankruptcy Court. Additionally, the Court finds no clear error in the findings of fact, and no abuse of discretion in denying disgorgement or sanctions upon either the debtor or his counsel.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. The Bankruptcy's Court's Order Denying Creditor, Utah Power System, LLC's Motion for Disgorgement (Doc. #2-2) is **affirmed.**

2. The Bankruptcy Court's Order Denying Motion for the Imposition of Sanctions (Doc. #2-3) is **affirmed.**

3. The Clerk shall transmit a copy of this Opinion and Order to the Bankruptcy Court, terminate all deadlines and motions, and close the appellate file.

**DONE and ORDERED** at Fort Myers, Florida, this ___5th___ day of August 2022.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Hon. Caryl E. Delano
Counsel of Record